UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| HERMAN DIAZ, : |  |
|     Petitioner, : |  |
| : |  |
| v. : | Case No. 3:06cv135 (PCD) |
| : |  |
| THERESA C. LANTZ, ET AL., : |  |
|     Respondents. : |  |

**RULING ON MOTION TO STAY OR DISMISS HABEAS PETITION**

Petitioner Herman Diaz petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondents move to stay or dismiss the habeas petition on the ground that it is a "mixed petition" containing both exhausted and unexhausted claims, and Petitioner has failed to exhaust his state court remedies with respect to at least one of the four claims raised in his petition. Petitioner did not respond to Respondents' motion. For the reasons stated herein, Respondent's Motion to Stay or Dismiss [Doc. No. 16] is **granted**.

**I.     BACKGROUND**

Petitioner was arrested on June 4, 1999 and charged with two counts each of the crimes of possession of cocaine with intent to sell, in violation of Connecticut General Statutes § 21a-278(a), and possession of cocaine with intent to sell within 1500 feet of a school, in violation of Connecticut General Statutes § 21a-278(b). A jury trial was held in the Judicial District of Waterbury, during which Petitioner was represented by Attorney Leonard Crone. Petitioner and co-defendant Tadeo Polanco were tried together. On April 11, 2000, the jury returned a verdict of guilty as to the two counts relating to crack cocaine seized from the ceiling of Petitioner's bedroom. Petitioner was acquitted on two counts relating to crack and powder cocaine discovered in a tan Oldsmobile parked across the street from his apartment. The Superior Court

sentenced petitioner to a total effective term of eighteen years imprisonment.

After his conviction, Petitioner appealed to the Connecticut Appellate Court, claiming that: (1) the trial court erred in denying his motion to sever his trial from that of his co-defendant, Polanco, and (2) the evidence was insufficient to support his conviction. On direct appeal of Petitioner's conviction, the Connecticut Appellate Court found, on the basis of the evidence admitted during Petitioner's underlying criminal trial, that the jury could reasonably have found the following facts:

> On June 4, 1999, at approximately noon, Robert Cizauskas and Stephen Hunt, officers in the Waterbury police department, traveled in an unmarked police vehicle to the vicinity of 133 Hillside Avenue, Waterbury. Upon arriving, Cizauskas and Hunt began conducting "preraid surveillance" in preparation for the execution of a search warrant, the scope of which included 133 Hillside Avenue, apartment 2A. At approximately 12:45 p.m., the officers saw the defendant and Polanco exit the building. The defendant, who was shirtless, was carrying a light colored plastic bag, and Polanco was carrying a black plastic bag. The two men walked across the street and entered a parked, tan Oldsmobile. A few minutes later, the defendant and Polanco exited the Oldsmobile, crossed the street and returned to the building. Neither was carrying either of the plastic bags.
>
> Fifteen minutes later, the Waterbury police officers who had been assigned to execute the warrant arrived at the scene. Two of them, Lawrence Smith and Robert Jones, entered the building and located apartment 2A. Smith knocked on the front door and announced, "Police with search warrant." Smith and Jones both heard noises and voices emanating from the defendant's apartment, but no one answered the door. Smith knocked and announced his presence again, but still no one answered. Finally, Jones, using force, gained entry to the apartment.
>
> Immediately upon entering the apartment, Jones saw Polanco running directly at him and heard him yelling, "Policia, policia!" Polanco collided with Jones, and both fell to the floor and began wrestling. Moments later, Jones subdued and handcuffed Polanco. Smith, who since had begun conducting a protective sweep of the apartment, saw the defendant, who was shoeless and still shirtless, running from the front bedroom. Smith detained the defendant. No one else was found in the apartment.
>
> The police then searched the apartment. In the front bedroom, Jones removed one of

the ceiling panels, revealing eight plastic bags wrapped in paper towels. Each plastic bag contained crack cocaine.[1]

While searching the closet in the middle bedroom, Smith discovered $580 in the pocket of a coat. Timothy Kluntz, a Waterbury police detective, searched the kitchen. There, he discovered a metal pot containing cocaine residue and several other items commonly associated with the production of crack cocaine, including a box of plastic bags, two opened boxes of baking soda, paper towels and a strainer. In a cluster on the kitchen counter, Kluntz found the defendant's social security card, the defendant's alien registration card and a sheet of paper listing certain drug sales.

The officers then searched the defendant and Polanco. On each of them, the officers found a key that fit the door to the apartment. The officers did not find any items commonly associated with the use of cocaine in the apartment or on the person of either the defendant or Polanco. Afterward, when it was time for the officers to transport the defendant and Polanco to the police station, an officer asked the defendant, who still was shoeless and shirtless, where his clothes were. The defendant replied that his clothes were in the front bedroom, which he identified as his room. The officers permitted the defendant to retrieve a shirt and a pair of shoes from the front bedroom, and transported him and Polanco to the station.

The state brought counts two and four against the defendant in response to the crack cocaine that the police had discovered in the ceiling of the apartment. The state brought the first and third counts against the defendant in response to allegations by the police that they later discovered crack and powder cocaine in the tan Oldsmobile parked across the street from the apartment. . . .

State v. Diaz, 69 Conn. App. 187, 189-91, 173 A.2d 1204 (2002) (footnote in original). The Court also noted that:

During the trial, the state called Domingo Toro, the superintendent of the apartment building, as a witness. Toro testified that in the month preceding the raid, the defendant leased the apartment and paid $800 for rent and a security deposit. The state also introduced a utility bill for the apartment, which was in the defendant's name, and other evidence indicating that the defendant had requested electric service one week before the search. Kluntz testified that he had seized a key from the defendant while searching him and, using that key, had unlocked the door to the apartment. Also, evidence indicated that the defendant was in the apartment shortly before and during the search, and that the officers had observed him running from the front bedroom, where the crack cocaine later was found, moments after they had

---

[1] The total weight of the crack cocaine was 221.6 grams, and it had a street value of $8000.

3

forced entry into the apartment. The defendant told the officers that his clothing was in the front bedroom and that the front bedroom was his. The defendant's social security card and alien registration card were found on the kitchen counter within inches of a sheet of paper listing drug sales. Michael Gugliotti, a sergeant in the Waterbury police department, testified that the other items found on the kitchen counter, i.e., the metal pot containing cocaine residue, the plastic bags, the opened boxes of baking soda, the paper towels and the strainer, were "consistent with an individual that would convert a powder cocaine into crack cocaine."

Id. at 193-94.

The Connecticut Appellate Court rejected Petitioner's claims and affirmed his conviction. Id. at 202. Petitioner did not seek certification from the Connecticut Supreme Court to obtain discretionary review of the Appellate Court's decision.

Subsequent to his direct appeal, Petitioner instituted a state habeas corpus proceeding in Connecticut Superior Court in the Judicial District of Tolland at Rockville, Docket Number CV02-817747, claiming both ineffective assistance of trial counsel and actual innocence. In his petition, Petitioner claimed that his conviction was obtained in violation of his right to the effective assistance of counsel as guaranteed by the United States and Connecticut Constitutions, due to Attorney Crone's failure to: (1) conduct a proper direct examination of Petitioner;[2] (2) conduct a proper cross-examination of Detective Timothy Kluntz, who testified at trial; (3) conduct proper direct examinations of Sergeant Gugliotti and Sergeant Scott O'Connor, both of whom testified at trial, on how each entered the apartment; (4) call as a witness the owner of the apartment where the drugs allegedly were found; (5) hire an investigator, which Petitioner insisted was necessary; (6) call as a witness a toxicologist to counter the testimony of the State's expert, Dr. Richard Pinder; (7) cross-examine Detective Timothy Kluntz on handling evidence

---

[2] Although Petitioner raised this claim in his habeas petition, claiming that he testified at trial, Petitioner did not actually testify at in the underlying criminal trial.

4

and transporting incriminating evidence to a laboratory; (8) conduct a proper cross-examination of Robert Jones, who testified at trial; (9) follow Public Defender Dennis Harrigan's investigations in this matter during his representation; (10) call officers as defense witnesses; (11) present a proper theory of defense to the jury, specifically with regard to police misconduct; and (12) investigate the narcotics officer Jones in order to impeach him over giving false testimony regarding the finding of narcotics in Petitioner's house, while he himself was a notorious drug dealer. (See State Habeas Corpus Pet., Count I ¶ 6, Resp't App. G.) Petitioner's actual innocence claim was based entirely upon his claim that he was convicted "on the false testimony of Waterbury Police Sergeant Robert Jones Jr." (See id., Count II ¶¶ 9-10.)

After hearing evidence and argument, the Court issued an oral decision on May 10, 2004, finding that Petitioner had failed to prove the allegations in his petition and dismissing the Petition for Writ of Habeas Corpus. (See Trans. of Oral Decision on State Pet. 69-91, May 10, 2004, Resp't App. E.) The Court denied Petitioner's petition for certification to appeal the dismissal of his habeas petition.

Petitioner subsequently took an appeal of the state habeas court's decision to the Connecticut Appellate Court, asserting that the habeas court abused its discretion in denying certification to appeal, and improperly rejected his claims of ineffective assistance of counsel and actual innocence. Specifically, Petitioner framed the issues for review by the Appellate Court as:

1. The petition for certification to appeal had a reasonable basis and the habeas court abused its discretion in denying it.

2. Criminal trial counsel's failure to properly conduct a pretrial investigation caused his representation to be ineffective and the habeas court erred in not so finding.

5

3. There was sufficient newly discovered evidence to establish Petitioner's actual innocence and the habeas court erred in not so finding.

(See Pet'r Habeas Corpus App. Br. at ii, Resp't App. H.) The Appellate Court dismissed the appeal, finding that "the petitioner has not demonstrated that the issues raised are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserve encouragement to proceed further." Diaz v. Comm'r of Corr., 90 Conn. App. 328, 328-329, 877 A.2d 884 (2005).

Petitioner then sought certification from the Connecticut Supreme Court to appeal the Appellate Court's decision, framing the questions presented for review as:

A. Whether the Appellate Court erred in concluding that the Petitioner failed to sustain his burden of persuasion that the denial of certification to appeal was a clear abuse of discretion.

B. Whether the Appellate Court erred in concluding that the Petitioner failed to make a substantial showing that he was denied a constitutional right.

(Pet. for Cert. 1, Aug. 1, 2005, Resp't App. J.) The Connecticut Supreme Court denied certification on September 20, 2005. See Diaz v. Comm'r of Corr., 275 Conn. 932, 883 A.2d 1242 (2005).

## II. DISCUSSION

On January 25, 2006, Petitioner filed the instant petition for habeas corpus with this Court. In that motion, Petitioner asserts four distinct claims:

Ground One: Testimony of Waterbury Police Officer Robert Jones was false and misleading. Tainted trial precluding petitioner due process of law.

Ground Two: Search of apt illegal. Warrant application tainted by fabrication. Violates petitioner's rights 4th and 14th Amendment U.S. Constitution.

Ground Three: Ineffective assistance of defense counsel at trial.

>           Ground Four: The petitioner is innocent. He had no possession of cocaine with
>                        intent to sell.

(Pet. Writ Habeas Corpus 9-15, Doc. No. 1.) On March 3, 2007, Respondents moved to dismiss or stay the petition on exhaustion grounds. Petitioner, after moving for an extension of time to respond to the motion, failed to submit a response.

A petitioner seeking federal habeas review pursuant to § 2254 must exhaust all available state remedies prior to filing a habeas petition in federal court. See 28 U.S.C. § 2254(b) & (c); see also Galdamez v. Keane, 394 F.3d 68, 72-74 (2d Cir. 2005) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 842, 144 L. Ed. 2d 1, 119 S. Ct. 1728 (1999)). 28 U.S.C. § 2254(c) requires "only that state prisoners give state courts a fair opportunity to act on their claims." O'Sullivan, 526 U.S. at 844. The Second Circuit has interpreted the exhaustion requirement as requiring a petitioner to "present the substance of the same federal constitutional claims that he now urges upon the federal courts to the highest court in the pertinent state." Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001) (internal quotation marks and citations omitted). Section 2254(c) does not require a petitioner "to ask the state for collateral relief, based on the same evidence and issues already decided by direct review," however, review in the state's highest court must be sought, even if such review is discretionary, because petitioners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 844-45 (citations omitted). If a petitioner fails to seek state review within the time allotted by state law or otherwise procedurally defaults his federal claims, those are deemed procedurally defaulted for the purposes of federal habeas review, unless the petitioner can show "cause for the default and actual prejudice as a

result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," i.e., that the petitioner is "actually innocent." Galdamez, 394 F.3d at 73 (quoting Coleman v. Thompson, 501 U.S. 722, 750, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991)); see also Aparicio, 269 F.3d at 90 ("This procedural default doctrine and its attendant 'cause and prejudice' standard are grounded in our concerns for federalism and comity between the state and federal sovereigns.").

Claims three and four, raised in the state habeas petition, and appealed to the Connecticut Appellate Court and Connecticut Supreme Court, have clearly been exhausted. Respondents assert that the question of whether claim one has been exhausted is "less clear," and argue that claim two has not been exhausted. Accordingly, Respondents argue that this is a "mixed petition" which should be dismissed or stayed until Petitioner has exhausted all claims.

With regard to claim one, Petitioner claimed in his state habeas petition that he was actually innocent, but was convicted due to "the false testimony of Waterbury Police Sergeant Robert Jones Jr." Claim one appears identical to the claim already raised, and therefore, the Court will view it as exhausted.

The second ground for relief in Petitioner's federal habeas petition concerns the legality of the search of the apartment in which the cocaine was allegedly found, with Petitioner claiming that the warrant application was "tainted by fabrication." Petitioner has not, either on direct appeal of his conviction or in the state court collateral attack of his conviction, raised a challenge to the legality of the search warrant which authorized the search of his apartment. When a claim has never been presented to a state court, and where a petitioner does not show "cause and prejudice" for the default, courts generally find that the claim is procedurally defaulted for the

purposes of federal habeas review. See Aparicio, 269 F.3d at 90 ("when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted") (quoting Coleman v. Thompson, 501 U.S. at 735 n.1); accord O'Sullivan v. Boerckel, 526 U.S. 838, 848, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (when the time for filing a state habeas petition has expired and the state court remedy is no longer available, claims not presented to the state courts are procedurally defaulted). Because Petitioner failed to raise his second claim, i.e., that the warrant application was "tainted by fabrication," in the state courts, and has failed to demonstrate "cause and prejudice" for the default, the Court finds that this claim is procedurally defaulted for the purpose of federal habeas review.

When a court is presented with a "mixed petition," containing both exhausted and unexhausted claims, the Second Circuit permits district courts to stay petitions, conditioning the stay on the petitioner's "pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed." Zarvela v. Artuz, 254 F.3d 374, 381 (2d Cir. 2001). The Supreme Court recently held, however, that "stay and abeyance should be available only in limited circumstances," i.e., "when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," the unexhausted claims are not "plainly meritless," and where the petitioner is not engaging in "abusive litigation tactics or intentional delay." Rhines v. Weber, 544 U.S. 269, 277-78, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005).

9

In the instant case, where the Connecticut Supreme Court denied certification on September 20, 2005, Petitioner's conviction became "final" for purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the one-year statute of limitations began to run on that date. Absent any tolling, the statute of limitations would have expired on or about September 20, 2006. This Court will not dismiss Petitioner's "mixed petition" in its entirety because doing so would jeopardize the timeliness of a subsequent petition, as the one-year statute of limitations has already expired. See Zarvela, 254 F.3d at 381-82. Because it was not exhausted and because he has not shown "cause and prejudice" for the default or demonstrated the existence of grounds for a stay under Rhines v. Weber, Petitioner's second claim is dismissed. This action will proceed with regard to the remaining three claims. Petitioner is advised that if he wants to attempt to have the now-dismissed claim considered by this Court, he will have to file and serve a motion to stay the petition under Rhines v. Weber, 544 U.S. 269, 277-78, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005).

## III. CONCLUSION

For the foregoing reasons, Respondent's Motion to Stay or Dismiss [Doc. No. 16] is **granted**. Petitioner's second claim is hereby dismissed, and the case shall proceed with regard to the remaining three claims. Respondents shall file a response to the Petition for Writ of Habeas Corpus [Doc. No. 1] on or before May 29, 2007, showing cause why the relief prayed for in the petition should not be granted and addressing the merits of Petitioner's remaining three claims. If Respondents fail to file their response on or before May 29, 2007, the petition may be granted absent opposition.

SO ORDERED.

Dated at New Haven, Connecticut, May 7, 2007.

/s/_____
Peter C. Dorsey, U.S. District Judge
United States District Court